UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JORGE SENDA AGUILERA,                )        NO. CV 12-9644-E
                                     )
              Plaintiff,             )
                                     )
      v.                             )        **MEMORANDUM OPINION**
                                     )
CAROLYN W. COLVIN, COMMISSIONER      )        **AND ORDER OF REMAND**
OF SOCIAL SECURITY ADMINISTRATION,   )
                                     )
              Defendant.             )
_____)

      Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS

HEREBY ORDERED that Plaintiff's and Defendant's motions for summary

judgment are denied and this matter is remanded for further

administrative action consistent with this Opinion.


                           **PROCEEDINGS**


      Plaintiff filed a complaint on November 14, 2012, seeking review

of the Commissioner's denial of social security benefits.  The parties

filed a consent to proceed before a United States Magistrate Judge on

December 18, 2012.  Plaintiff filed a motion for summary judgment on

June 3, 2013.  Defendant filed a motion for summary judgment on

June 6, 2013.  The Court has taken both motions under submission

without oral argument.  See L.R. 7-15; "Order," filed November 14,

2012.


**BACKGROUND**


Plaintiff filed an application for benefits on November 13, 2009,

asserting disability since April 30, 2008 (Administrative Record

("A.R.") 140-41).  Plaintiff alleged that injuries to his "lower

waist, shoulder [and] left hand" limited his ability to work (A.R.

160).


An Administrative Law Judge ("ALJ") found that, although

Plaintiff suffered from severe degenerative disc disease of the lumbar

spine and status left rotator cuff repair, Plaintiff retained the

residual functional capacity to perform a limited range of light work

(A.R. 31, 34 (citing 20 C.F.R. 404.1567(b)).[1]  The ALJ found that

Plaintiff's limitations precluded the performance of Plaintiff's past

---

[1]    Specifically, the ALJ found that Plaintiff could:

. . . stand, walk, or sit for 6 hours in an 8 hour
workday; can occasionally climb ramps and stairs,
balance, stoop, kneel, or crouch; can never climb
ladders, ropes or scaffolds or crawl; can occasionally
reach overhead with the left upper extremity; and must
avoid concentrated exposure to vibrations and cold
temperatures.

(A.R. 34 (adopting non-examining medical expert's testimony at
A.R. 78 and adding limitations for vibrations and cold
temperatures)).

1  relevant work, but not the performance of certain other jobs (A.R. 37
2  (adopting vocational expert testimony at A.R. 86-87)).
3
4      Plaintiff sought review from the Appeals Council, submitting
5  letters from Plaintiff's representative and some additional medical
6  records (A.R. 199-200, 203-05 (letters); A.R. 357-66 (additional
7  medical records)).  The Appeals Council considered these additional
8  materials, but denied review (A.R. 1-6).
9
10                          **STANDARD OF REVIEW**
11
12      Under 42 U.S.C. section 405(g), this Court reviews the
13  Administration's decision to determine if:  (1) the Administration's
14  findings are supported by substantial evidence; and (2) the
15  Administration used correct legal standards.  See Carmickle v.
16  Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,
17  499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such
18  relevant evidence as a reasonable mind might accept as adequate to
19  support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401
20  (1971) (citation and quotations omitted); see also Widmark v.
21  Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).
22
23      Where, as here, the Appeals Council considered additional
24  material but denied review, the additional material becomes part of
25  the Administrative Record for purposes of the Court's analysis.  See
26  Brewes v. Commissioner, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen
27  the Appeals Council considers new evidence in deciding whether to
28  review a decision of the ALJ, that evidence becomes part of the

administrative record, which the district court must consider when
reviewing the Commissioner's final decision for substantial
evidence."; expressly adopting <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1452
(9th Cir. 1993)); <u>Taylor v. Commissioner</u>, 659 F.3d 1228, 1232 (2011)
(courts may consider evidence presented for the first time to the
Appeals Council "to determine whether, in light of the record as a
whole, the ALJ's decision was supported by substantial evidence and
was free of legal error"); <u>Penny v. Sullivan</u>, 2 F.3d 953, 957 n.7 (9th
Cir. 1993) ("the Appeals Council considered this information and it
became part of the record we are required to review as a whole"); <u>see
generally</u> 20 C.F.R. §§ 404.970(b), 416.1470(b).

**DISCUSSION**

**I.     The ALJ Erred in the Evaluation of Evidence from Plaintiff's
        Examining Physicians.**

    As discussed below, the ALJ failed properly to evaluate the
examining physicians' opinions regarding Plaintiff's limitations.

    **A.    Summary of the Available Medical Evidence**

    Following Plaintiff's work-related injury,[2] Plaintiff received
chiropractic treatment from Arbi Mirzaians DC (A.R. 162; <u>see also</u> A.R.
222.  Mirzaians reportedly referred Plaintiff for MRI and CT scans of

---

    [2]    A 60-pound hanging flowerpot reportedly fell from a
height of 10 feet, striking Plaintiff on the right side of his
back and ribs as Plaintiff was bent over.  <u>See</u> A.R. 248.

4

his lower back (A.R. 163).  The record before the ALJ contained no
regular treatment notes or reports from Mirzaians.[3]


     As part of Plaintiff's workers compensation claim, Plaintiff was
evaluated by two orthopedic surgeons.  Dr. Stepan Kasimian evaluated
Plaintiff on three occasions and prepared reports.  See A.R. 233-37,
242-44, 247-54 ("Spinal Consultation Re-Evaluation Report" and
"Supplementary Report" dated October 13, 2009, "Spinal Consultation
Re-Evaluation Report" dated September 1, 2009, and "Orthopedic
Surgical Consultation Report" dated June 9, 2009).  Plaintiff
initially complained of left shoulder and low back pain, but later
complained of leg pain as well (A.R. 234, 243, 249).  On examination,
Dr. Kasimian found pain aggravated by flexion and extension of
Plaintiff's lumbar spine (A.R. 252).  Plaintiff also had decreased
motor power strength in his left lower extremities (A.R. 252).
Available x-rays and MRI studies showed spondylosis at L5-S1, a 7mm
disc herniation (paracentral and left) at L5-S1, and a 3mm disc
herniation at L4-5 with mild stenosis (A.R. 253).[4]  Dr. Kasimian
diagnosed Plaintiff with L5-S1 herniated nucleus pulposus and left L5
radiculopathy, indicated that Plaintiff was a surgical candidate, and
requested that Plaintiff return in six weeks for re-evaluation

---

[3]     As discussed below, Plaintiff did submit to the Appeals
Council a "Primary Treating Physician's Re-Evaluation Narrative
Report and Request for Authorization" by Mirzaians dated
December 8, 2011 (A.R. 363-66).

[4]     It appears that the imaging studies included in the
record are incomplete.  Dr. Kasimian referenced x-rays taken the
day after Plaintiff's injury (i.e., on May 1, 2008), and a
June 9, 2009 x-ray that are not in the record.  Compare A.R. 249
and 253 (Dr. Kasimian's notes) with A.R. 255-57 (the only imaging
reports included in the record).

1   (A.R. 253).

2

3       On Plaintiff's second visit, Dr. Kasimian stated that Plaintiff

4   had failed conservative treatment and was a candidate for L4-5 and L5-

5   S1 decompression and fusion (A.R. 243-44).  Plaintiff reported

6   difficulty walking for prolonged periods of time (A.R. 243).

7   Available radiographs and MRIs assertedly showed Grade 1

8   spondylolisthesis with 4-mm of motion on flexion-extension films, and

9   foraminal stenosis at L5 with lateral recess stenosis at L4-5 (A.R.

10  243).  Dr. Kasimian requested authorization for surgery (A.R. 244).

11

12      On Plaintiff's third visit, Dr. Kasimian stated that Plaintiff

13  wanted to move forward with surgery (A.R. 234).  On examination,

14  Plaintiff had reduced motor power strength in both his left and right

15  lower extremities (A.R. 234).  Dr. Kasimian diagnosed Plaintiff with

16  herniated nucleus pulposus at L4-5 and L5-S1, degenerative disc

17  disease at L4-5 and L5-S1, chronic low back pain, and chronic

18  radiculopathy (A.R. 234-35).  Dr. Kasimian again requested

19  authorization for surgery (A.R. 235).

20

21      Authorization for the surgery did not follow.  Plaintiff

22  reportedly did not meet the guidelines for surgery because there

23  supposedly was no documentation of at least one imaging report finding

24  nerve root compression, lateral disc rupture, or lateral recess

25  stenosis, with a diagnosis for which fusion is indicated at the

26  corresponding levels (A.R. 213-16).

27  ///

28  ///

1    Meanwhile, orthopedic surgeon Dr. Arthur Garfinkel examined
2    Plaintiff and prepared an Orthopaedic Qualified Medical Evaluation
3    dated September 21, 2009 (A.R. 221-32).   Dr. Garfinkel reviewed, <u>inter</u>
4    <u>alia</u>, Plaintiff's relevant medical records from Mirzaians and Dr.
5    Kasimian's initial report (A.R. 221, 227-28).   At the time, Plaintiff
6    had undergone physical therapy and epidural steroid injections (A.R.
7    228).

8

9    To Dr. Garfinkel, Plaintiff reported left shoulder and low back
10   pain, radiating down both legs, with more pain on the left side (A.R.
11   223).   Plaintiff was taking naproxen for pain (A.R. 224).   Examination
12   revealed:   (1) a somewhat stiff gait; (2) full range of motion for the
13   cervical and thoracic spine without tenderness; (3) full range of
14   motion in the lumbosacral spine with pain at the end range of motion,
15   and muscle tenderness to palpation; (4) positive straight leg raising
16   in both seated and supine position; (5) full range of motion for the
17   left shoulder with pain at the end range of motion in all planes and
18   positive impingement sign; and (6) no evidence of atrophy in the upper
19   or lower extremities (A.R. 224-26).

20

21   Dr. Garfinkel opined that Plaintiff had a strain of the
22   lumbosacral spine, lumbar radiculopathy, herniated nucleus pulposus of
23   the lumbosacral spine, sprain and strain of the left shoulder, a torn
24   left rotator cuff, and impingement syndrome of the left shoulder (A.R.
25   229).   Plaintiff then was a candidate for lumbosacral and left
26   shoulder surgery (A.R. 229).   Dr. Garfinkel opined that Plaintiff
27   could work with the following restrictions:   (1) lifting no more than
28   15 pounds on a frequent and occasional basis; (2) standing or walking

7

no more than four hours in an eight hour period, and standing no more
than 30 minutes at one time; (3) no overhead reaching with his left
upper extremity; and (4) no climbing, crawling, kneeling, squatting,
bending, stooping, or balancing (A.R. 229-31).

On December 11, 2009, Dr. Daniel Silver performed surgery on
Plaintiff's left shoulder to repair the rotator cuff.  Dr. Silver saw
Plaintiff for follow-up visits through at least January 25, 2010 (A.R.
307-56).  Six weeks after the surgery, Plaintiff's wounds were healed
and he was able to move his shoulder, although with limited range of
motion (A.R. 308).  Plaintiff reportedly still had shoulder and back
pain that radiated to his right leg (A.R. 308).  Dr. Silver diagnosed
Plaintiff with left shoulder rotator cuff tear, acromioclavicular
joint severe arthrosis, lumbar sprain/strain (rule out herniated
nucleus pulposus), insomnia, depression, postoperative bladder
dysfunction, and status post arthroscopic subacromial decompression,
partial claviculectomy and left shoulder rotator cuff repair (A.R.
308).  Plaintiff was referred for physical therapy (A.R. 308).

Plaintiff underwent an orthopedic examination by Dr. Payam
Moazzaz on April 6, 2010 (A.R. 274-79).  Dr. Moazzaz reviewed no
medical records (A.R. 274).  Plaintiff complained of left shoulder and
low back pain (A.R. 274).  Plaintiff was observed to have difficulty
squatting, tenderness to palpation in the paraspinal musculature and
diminished range of motion, but negative straight leg raising (A.R.
276).  Plaintiff also had decreased range of motion in his left
shoulder (A.R. 276).  Dr. Moazzaz opined that Plaintiff had
degenerative disc disease of the lumbar spine and was status post left

shoulder rotator cuff repair based on the incision to Plaintiff's shoulder (A.R. 278). Dr. Moazzaz opined that Plaintiff was capable of performing medium work (lifting and carrying 50 pounds occasionally and 25 pounds frequently), standing and walking six hours and sitting six hours out of an eight hour day, with frequent climbing, stooping, kneeling and crouching, and frequent overhead activities on the left side (A.R. 278).

Non-examining state agency review physician K. Mauro completed a Physical Residual Functional Capacity Assessment for Plaintiff dated April 21, 2010 (A.R. 280-84). Dr. Mauro opined that Plaintiff was capable of performing light work, with preclusion from climbing ladders, ropes, or scaffolds, with only occasional kneeling and crawling, with limited left upper extremity reaching, and with avoidance of extreme cold and vibration. Id. Dr. Mauro stated that a light residual functional capacity, rather than a medium capacity, better accommodated Plaintiff's combination of impairments in view of the lumbar spine imaging (which Dr. Moazzaz did not review) (A.R. 298). A later non-examining reviewing physician, Dr. Vaghaiwalla, agreed with Dr. Mauro's assessment. See A.R. 300-02.

Dr. Arthur Brovender, the non-examining medical expert, reviewed the available medical records and testified from Dr. Moazzaz's report that Plaintiff had decreased range of motion in his lumbosacral spine and left shoulder, and negative straight leg raising, with normal motor, neurological and sensory examinations (A.R. 72, 76-77). Dr. Brovender did not summarize or discuss any of the other physicians' opinions or findings. Dr. Brovender opined that Plaintiff would be

1  able to perform a limited range of light work, with all of the

2  limitations the ALJ found to exist except the environmental

3  limitations.  Compare A.R. 78 with 34 (ALJ's residual functional

4  capacity assessment).

5

6  **B.   Evidence Reviewed by the Appeals Council**

7

8      After the ALJ's adverse decision, Plaintiff submitted a "Physical

9  Capacities Evaluation" form from Dr. Thomas Grogan dated September 28,

10  2011 (A.R. 357; see also A.R. 4 (Appeals Council's exhibit list)).

11  Dr. Grogan opined that Plaintiff was capable of sitting four hours,

12  standing three hours, and walking two hours in an eight hour day, and

13  lifting and carrying up to five pounds occasionally (A.R. 357).

14  Plaintiff also submitted a report from Mirzaians dated December 8,

15  2011, wherein Mirzaians stated that Plaintiff had undergone low back

16  surgery (A.R. 363).  Plaintiff did not submit any records from that

17  surgery, but did indicate in a letter to the Appeals Council that the

18  surgery occurred on November 8, 2011 (A.R. 203-05).

19

20  **C.   Analysis**

21

22      As summarized above, the ALJ found Plaintiff capable of

23  performing a limited range of light work.  In reaching this

24  conclusion, the ALJ purportedly gave "moderate" weight to the opinions

25  of consultative examiner Dr. Moazzaz, state agency review physician

26  Dr. Mauro, and non-examining medical expert Dr. Brovender (A.R. 34-

27  36).  The ALJ reportedly gave "little" weight to the opinions of

28  consultative examiner Dr. Garfinkel because Dr. Garfinkel's opinions

1  "[were] developed as part of [Plaintiff's] worker's compensation case"

2  and "[were] based a single examination" (A.R. 36).[5]

3

4      The Administration must "consider" and "evaluate" every medical

5  opinion of record.  20 C.F.R. § 404.1527(b) and (c); see SSR 96-8p.

6  In this consideration and evaluation, an ALJ "cannot reject [medical]

7  evidence for no reason or the wrong reason."  Cotter v. Harris, 642

8  F.2d 700, 706-07 (3d Cir. 1981); see Day v. Weinberger, 522 F.2d 1154,

9  1156 (9th Cir. 1975) (ALJ may not make his or her own lay medical

10  assessment); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.

11  1887) ("ALJ cannot arbitrarily substitute his [or her] own judgment

12  for competent medical opinion").

13

14      In the present case, the ALJ erred in the evaluation of Dr.

15  Garfinkel's opinions.  The only two stated reasons for discounting Dr.

16  Garfinkel's opinions (the "worker's compensation" rationale and the

17  "single examination" rationale) are demonstrably arbitrary and/or

18  legally infirm.

19

20      With regard to the "worker's compensation" rationale, the Ninth

21  Circuit has made clear that "in the absence of other evidence to

22  undermine the credibility of a medical report, the purpose for which

23  [a medical] report was obtained does not provide a legitimate basis

24  for rejecting it."  Reddick v. Chater, 157 F.3d 715, 726 (9th Cir.

25

26      [5]    From the residual functional capacity assessment the
   ALJ adopted, it appears that the ALJ gave the greatest weight to
27  the non-examining physician opinions of Drs. Mauro and Brovender.
   Compare A.R. 34 (ALJ's assessment) with A.R. 78 and 280-84
28  (opinions).

1988) (mere fact that opinions were provided for disability carrier at
the request of counsel is not a legitimate basis for evaluating the
reliability of the report); see Booth v. Barnhart, 181 F. Supp. 2d
1099, 1105 (C.D. Cal. 2002) ("the ALJ may not disregard a physician's
medical opinion simply because it was initially elicited in a state
worker's compensation proceeding . . ."). Here, the ALJ identified no
other evidence to undermine the credibility of Dr. Garfinkel's report,
and no such evidence is apparent in the available record.

The "sole examination" rationale is equally unsustainable. The
fact that Dr. Garfinkel examined Plaintiff only once plainly does not
provide a non-arbitrary basis for discounting Dr. Garfinkel's opinion
in favor of the opinions of Dr. Moazzaz (who also examined Plaintiff
only once and who did not review any medical records),[6] or the
opinions of Drs. Mauro and Brovender (who did not examine Plaintiff at
all). Without further consideration and explanation, substantial
evidence does not support the ALJ's rejection of Dr. Garfinkel's
opinion in favor of the opinions of Drs. Moazzaz, Mauro, and

///
///
///
///

_____

[6]      The only reason the ALJ stated for purporting to accord
"moderate weight" to Dr. Moazzaz's opinions is equally arbitrary
and similarly fails to distinguish Dr. Moazzaz's opinions from
those of Dr. Garfinkel. The ALJ "assigned moderate weight to Dr.
Moazzaz's opinion, as it is based on professional observation and
testing" (A.R. 35). Of course, Dr. Garfinkel's opinions also
were based on, inter alia, "professional observation and testing"
(A.R. 221-32).

1 Brovender.[7]

2

3 **II.   Remand is Appropriate.**

4

5 Remand is appropriate because the circumstances of this case

6 suggest that further administrative review could remedy the ALJ's

7 errors.[8] McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see

8 generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an

9 administrative determination, the proper course is remand for

10 additional agency investigation or explanation, except in rare

11 circumstances).

12 ────────────────

13 [7]   The Court observes that, despite the ALJ purportedly
having given "moderate weight" to Dr. Moazzaz's opinions, the ALJ
14 adopted a residual functional capacity more akin to the capacity
assessed by the non-examining medical sources.  In the absence of
15 record evidence to support the non-examining opinions, however,
such assessments could not by themselves constitute substantial
16 evidence to support the ALJ's decision.  See Andrews v. Shalala,
53 F.3d 1035, 1042 (9th Cir. 1995).
17
18 [8]   There are outstanding issues that must be resolved
before a proper disability determination can be made in the
19 present case.  For this reason, the Ninth Circuit's decision in
Harman v. Apfel, 211 F.3d 1172 (9th Cir.), cert. denied, 531 U.S.
20 1038 (2000) ("Harman") also does not compel a reversal for the
immediate payment of benefits.  In Harman, the Ninth Circuit
21 stated that improperly rejected medical opinion evidence should
be credited and an immediate award of benefits directed where
22 "(1) the ALJ has failed to provide legally sufficient reasons for
rejecting such evidence, (2) there are no outstanding issues that
23 must be resolved before a determination of disability can be
made, and (3) it is clear from the record that the ALJ would be
24 required to find the claimant disabled were such evidence
credited."  Harman at 1178 (citations and quotations omitted).
25 Assuming, arguendo, the Harman holding survives the Supreme
Court's decision in INS v. Ventura, 537 U.S. 12 (2002), the
26 Harman holding does not direct reversal of the present case.  In
addition to the outstanding issues that must be resolved, it is
27 not clear that the ALJ would be required to find Plaintiff
disabled for the entire period of claimed disability even if Dr.
28 Garfinkel's opinions were fully credited.

**CONCLUSION**

   For all of the foregoing reasons, Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.[9]

   LET JUDGMENT BE ENTERED ACCORDINGLY.

         DATED:   July 24, 2013.


_____/S/_____
                    CHARLES F. EICK
            UNITED STATES MAGISTRATE JUDGE

---

[9]    The Court has not reached any of the other issues raised by Plaintiff.